### George J. Funk, Defendant in Error, v. Crescent Packing Company, Plaintiff in Error.

1. NEGLIGENCE—*when as to manner of employment of set-screw does not establish.* The use of a projecting set-screw in machinery is not negligence *per se*, nor is the slight unusual projection of such a screw negligence *per se*.

2. CONTRIBUTORY NEGLIGENCE—*when servant guilty of.* A servant is guilty of contributory negligence who undertakes to do work known by him to be dangerous when he has the power and the opportunity to remove such danger.

3. MASTER AND SERVANT—*when doctrine of assumed risk applies.* *Held,* that the servant injured in this case assumed the risk of injury from the set-screw, knowledge of which he had and the danger of which he appreciated.

Action in case for personal injuries. Error to the City Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding. Heard

in this court at the February term, 1908.    Reversed, with finding of facts.    Opinion filed September 12, 1908.

WISE & McNULTY, for plaintiff in error.

FREELS & JOYCE and WALTHER & MUENCH, for defendant in error.

MR. JUSTICE MYERS delivered the opinion of ·the court.

This is an action on the case for personal injuries received by the plaintiff (the defendant in error), while working for the defendant (the plaintiff in error) in its plant.  The declaration recites that on the 30th day of January the defendant was engaged in the meat packing business, in the city of East St. Louis, operating a meat packing plant, and had therein engines, boilers, shafts, pulleys and belts, used in its business; that it was its duty to furnish the plaintiff a reasonably safe place to do his work, and reasonably safe tools and machinery; that on the twenty-first day of January, 1907, the plaintiff was working for the defendant under a contract, at a salary of $90 a month and was in charge of the rendering, fertilizing and cold storage departments as superintendent; that on the 30th day of January, 1907, he was acting temporarily as engineer at the special order and request of the defendant, and while he was engaged in oiling the shaft of one of the pulleys in the slaughtering department, and standing on a board laid across the joists of said building, there being no proper platform or scaffolding on which the plaintiff could stand to do said oiling, the sleeve of his coat unavoidably was caught by a set-screw, which the defendant had negligently permitted to extend about two inches over a cap on the shaft, and was· thereby injured.

The defendant pleaded not guilty and the jury returned a verdict in favor of the plaintiff for $6,000. From a judgment on the verdict, the defendant comes to this court by writ of error.

The plaintiff was employed by defendant under written contract for one year from January 1, 1907, at a salary of $90 per month as superintendent "to take charge of the rendering, fertilizing and cold storage departments." Before entering into the contract, plaintiff visited, looked over and inspected the plant then in process of erection at East St. Louis, where he was to work. All the machinery at that time had not been completely erected. The plaintiff was fifty-two years old, with sixteen or eighteen years' experience as foreman of the tank-room, lard, tallow and fertilizing departments in the packing business. The operation of the plant in this case began about January 16th, but prior to that time there had been trial runs of the machinery. The plaintiff reported for duty under his contract January 1st, and until operations began was engaged at different kinds of preparatory work. He helped to place pipes in the building, fired the boiler and other kinds of work to be done in preparation for starting the plant. The defendant had not yet secured an engineer and plaintiff, by request of the general manager, took charge of the engine and oiled the machinery in the trial runs, continuing to work in this capacity until he was injured. During the time he was attending to the engine and machinery he twice oiled the shaft where he was hurt. In the building there are two shafts in line north and south, on which are pulleys from which belts are lined east and west. At the place where the plaintiff was injured were two belts. South of the north belt was a boxing in which the shaft revolved and was held in position. The boxing was screwed to a post fastened below to a cross-beam. The collar about 1¼ inches thick was between the pulley and boxing and fastened to the shaft by a set-screw. The shafts were twenty-three feet from the floor. At the time of the accident the plaintiff was engaged in oiling the shafts at bearing points, a work he had done twice before since his employment by defendant. To provide a platform on

which to stand and reach the place where oil was to
be applied, he placed a board fourteen or sixteen
inches wide on beams under the shafts. As to
what the plaintiff was doing at the time, what hap-
pened, and the manner of his injury, he testified: "I
took the oil can and stepped on the board; I had oiled
on the north side of the belt, and then stooped under
the belt; there was no other way to commence oiling
the box except stooping under that belt; the belt was
a twenty-four inch belt; after I got under the belt
I had to raise up off of my knees; I shoved my can to
one side to get straightened up; I went to reach with
one hand for the post to catch myself from falling
backwards, when this set screw caught my jumper and
I was whirled around the shaft."

A peremptory instruction to find for the defendant
was asked by the defendant and refused by the court.
In this we think the court erred and that the action
of plaintiff must fail for want of evidence to support
it. The charge of negligence alleged to have caused
the injury is that the defendant permitted a set-screw
to extend about two inches over a cap on a revolving
shaft. There is evidence that the set-screw in ques-
tion projected from the collar from one and a quarter
to one and three-quarter inches, but this was not evi-
dence tending to prove negligence. It is not disputed
that the usual manner of fastening the collar to the
shaft, as in this case, is by the use of set-screws which
project more or less, sufficient to catch the clothing
and cause injury if brought in contact with a rapidly
revolving shaft to which set-screws are fastened. One
of plaintiff's witnesses, an experienced engineer, testi-
fied, that usually the set-screws project from a half
to three-quarters of an inch, but that he had seen them
project as much as one and a half inches. Another
witness testified, that it was customary to fasten the
collars on shafts with set-screws projecting from the
collar. We are directed to no evidence in the record
that tends to prove the defendant negligent in using

and permitting projecting set-screws in the collar fastened to the shaft as was done in this case, nor does the estimate of witnesses—varying a fraction of an inch from the usual projection, tend to establish negligence as to the set-screw in question, for the danger from contact therewith could not have been appreciably enhanced by any excess testified to. The use of a projecting set-screw in machinery construction is matter of common knowledge, and as stated by the court in Aurora Boiler Works v. Colligan, 115 Ill. App. 527, cited by appellee, it cannot be held to be a defect or its use negligence *per se*. See also American Malting Co. v. Lelivelt, 101 Ill. App. 320.

The plaintiff fails in proof of another material allegation without which he cannot recover, though the defendant's negligence as charged were fully established. He was not in the exercise of due care for his own safety. He was of an age and experience in working about this and like machinery for years, to know and appreciate the danger attending the operation which engaged him when hurt. That it was highly dangerous to move about under and near the shafts, pulleys and belting in operation, with only a narrow plank twenty-three feet above the floor for a platform was so fearfully apparent as to charge him, in the exercise of ordinary prudence, with every precaution to minimize the hazard. He was the engineer and controlled the machinery, and chose to perform this work while the machinery was in motion rather than while at rest, which could have been done without danger. He knew before he attempted it that the work was dangerous and had the power to make it safe. Choosing to work under conditions hazardous in the extreme, we think all reasonable minds will agree that in ordinary prudence he should have exercised his power and made the conditions safe by stopping the engine.

It is further to be observed that the direct cause of the injury was due to an involuntary act of the plaintiff. In an attempt to save himself from falling backward he brought his person or clothing in contact with

the set-screw.  As he describes the occurrence his injury was purely accidental, without any basis for inference that it would not have happened had there been a quarter or half inch less projection of the set-screw.  Clearly the danger to which he was exposed was within the risks assumed by his employment.

We have not commented upon numerous authorities cited by counsel, for the reason that legal propositions are not in dispute and because the application of well-established principles to the evidence in this case seems so clearly to be in harmony with all the reported decisions that further comment is unnecessary.  As the action fails for want of evidence, the cause will not be remanded.

*Reversed, with finding of facts.*

We find as facts, to be incorporated in the judgment, that plaintiff in error was not guilty of the negligence charged, that defendant in error was guilty of contributory negligence, and that the hazard to which he was exposed was a risk assumed.